UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
EL PASO DIVISION

| | | |
|---|---|---|
| DANIEL SANDOVAL, | § | |
| TDCJ #2115260 | § | |
|     *Plaintiff,* | § | |
| | § | |
| VS | § | Case No. EP-17-CV-0217-PRM-RFC |
| | § | |
| EL PASO NORTHEAST POLICE | § | |
| DEPARTMENT | § | |
| S.W.A.T. TEAM ET AL | § | |
|     *Defendants,* | § | |

**REPORT AND RECOMMENDATION OF THE MAGISTRATE JUDGE**

Plaintiff Daniel Sandoval ("Sandoval"), proceeding *pro se*, filed a complaint pursuant to 42 U.S.C. § 1983. After due consideration, pursuant to 28 U.S.C. § 1915, the Court **RECOMMENDS** that Sandoval's claims should be **DISMISSED WITH PREJUDICE** to their being asserted again until the *Heck* conditions are met. *DeLeon v. City of Corpus Christi*, 488 F.3d 649, 657 (5th Cir. 2007) (citing *Johnson v. McElveen*, 101 F.3d 423, 424 (5th Cir. 1996)).

**I.    PROCEDURAL HISTORY**

On July 14, 2017, Sandoval filed his original complaint and an application to proceed *In Forma Pauperis*. (ECF. No. 1). Subsequently, on August 03, 2017, the Court granted Sandoval's application and filed his original complaint. (ECF. Nos. 5, 6).

On August 31, 2017, the City of El Paso filed its answer and motion to dismiss. (ECF. No. 18). Separately, Officer Mata and Officer Butzon filed their motions to dismiss on September 1, 2017, and October 25, 2017, respectively. ( ECF. Nos. 19, 29). On October 24, 2017, Sandoval filed a motion to appoint counsel which this Court denied on November 1, 2017. (ECF. Nos. 31, 32).

On November 28, 2017, Sandoval attempted to amend his original complaint by naming additional defendants. (ECF. No. 40). On January 5, 2018, the Court granted Sandoval's request, and his amended complaint was filed on January 8, 2018. (ECF. Nos. 40, 41).

## II. BACKGROUND

On July 21, 2015, El Paso Police responded to several 911 calls regarding an individual threatening several people with weapons. (ECF. No. 19:1). After interviewing several witnesses, the police identified the individual as Daniel Sandoval. (*Id.*) Subsequently, Sandoval barricaded himself in his home and the SWAT and Crisis Management Teams ("CMT") were called. (ECF. No. 19: Exh. A). First, the SWAT and CMT officers attempted to resolve the situation through a loud speaker and a throw phone. (*Id.*) After their unsuccessful attempts, the SWAT and CMT officers attempted to force Sandoval out of his home by injecting chemical agents into Sandoval's residence. (*Id.*) Once again their efforts were unsuccessful. (*Id.*) Finally, after hearing noises emanating from Sandoval's garage, the SWAT and CMT officers decided to use an armored vehicle ("Bearcat") to breach the garage door and introduce chemical agents into the garage. (*Id.*) Before the Bearcat could breach the garage door, Sandoval drove his vehicle through the garage door, rammed into his mother's SUV, knocked over a small stone wall, drove through his neighbor's yard, and fled at a high speed with his lights turned off. (*Id.*) During the subsequent car chase, Sandoval rammed one SWAT equipment vehicle, injuring one of the officers, and rammed another occupied police vehicle. (*Id.*) Eventually, due to the heavy damages sustained from ramming several vehicles, Sandoval's vehicle became disabled. (*Id.*)

Sandoval refused to come out of his disabled vehicle and was armed with two knives. (*Id.*) In order to remove Sandoval from his vehicle, Officer Solis tased him. (*Id.*) The first TASER shot was ineffective, and Officer Goggins was forced to tase Sandoval again when Sandoval

attempted to cut the cables from the first TASER. (*Id.*) The second shot momentarily disabled Sandoval. (*Id.*) Members of the SWAT team then dragged Sandoval out of his vehicle and forcibly removed the knives from Sandoval. (*Id.*) After being handcuffed, Sandoval continued to struggle and spit at the SWAT team. (*Id.*) The SWAT team used additional force to subdue Sandoval and place him under arrest. (*Id.*) According to Sandoval, the SWAT team tased him "way pass the limit." (ECF. No. 7:4). The officers used excessive force when they dragged him out of his vehicle, slammed him on the ground, cuffed him, kicked him, and then slammed his head again on the ground and on the police vehicle. (*Id.*) Sandoval claims he suffered fractures to his lower back and lost a front tooth due to the excessive force employed by the SWAT team. (ECF. No. 41). After being arrested, Sandoval entered into a plea agreement pleading guilty to two counts of aggravated assault with a deadly weapon and one count of evading arrest with a vehicle.[1] Sandoval was sentenced to 5 years confinement.

Subsequently, Sandoval brought suit under § 1983 for the violation of his Fourth Amendment rights in connection with the force used in his arrest. In Sandoval's original complaint, Sandoval contends that the El Paso Northeast Police Department SWAT team, Officer Mata, Officer Butzon, and Officer Short violated his Fourth Amendment rights by using excessive force (ECF. No. 7). In his amended complaint, Sandoval adds Officers Mazza, Machuca, Montion, White, Montes, Solis, Talamantes, and Goggins as additional defendants. (ECF. No. 41).

---

[1] Sandoval pleaded guilty in the 205th Judicial District Court for El Paso Texas, Case No. 20150D05082 and Case No. 20150D04434, for two counts of aggravated assault with a deadly weapon and one count of evading arrest with a vehicle. *See also* TEXAS DEPARTMENT OF CRIMINAL JUSTICE, https://offender.tdcj.texas.gov/OffenderSearch/offenderDetail.action?sid=50596891 (last visited Feb. 19, 2018).

### III. LEGAL STANDARD

28 U.S.C. § 1915 instructs that a court "shall" dismiss an *in forma pauperis* complaint at any time, if it determines that the complaint is frivolous or it fails to state a claim on which relief may be granted. 28 U.S.C. § 1915(e)(2)(B)(i)–(ii) (2012). Further, the court may *sua sponte* dismiss on these grounds, even without serving the defendants. *See Wilson v. Barrientos*, 926 F.2d 480, 482 (5th Cir. 1991) ("Dismissal [under § 1915] is 'often made *sua sponte* prior to the issuance of process, so as to spare prospective defendants the inconvenience and expense of answering such complaints.'") (quoting *Neitzke v. Williams*, 490 U.S. 319, 324 (1989)). The standard under § 1915(e)(2)(B) for dismissing a frivolous complaint applies to both prisoner and non-prisoner complaints. *Newsome v. EEOC*, 301 F.3d 227, 231-33 (5th Cir. 2002) (per curiam) (affirming dismissal based on § 1915(e)(2)(B) in a non-prisoner case).

"[A] complaint . . . is frivolous where it lacks an arguable basis either in law or in fact." *Neitzke*, 490 U.S. at 325. "A complaint lacks an arguable basis in law if it is based on an indisputably meritless legal theory, such as if the complaint alleges the violation of a legal interest which clearly does not exist." *Berry v. Brady*, 192 F.3d 504, 507 (5th Cir. 1999) (quoting *Harper v. Showers*, 174 F.3d 716, 718 (5th Cir. 1999)). A claim is factually frivolous if the facts are "clearly baseless, a category encompassing allegations that are 'fanciful,' 'fantastic,' and 'delusional.'" *Hicks v. Garner*, 69 F.3d 22, 25 (5th Cir. 1995) (quoting Denton v. Hernandez, 504 U.S. 25, 33–34 (1992)).

To determine whether a complaint fails to state a claim upon which relief may be granted, courts engage in the same analysis as when ruling on a motion for dismissal under Federal Rule of Civil Procedure 12(b)(6). See *Hale v. King*, 642 F.3d 492, 497–99 (5th Cir. 2011) (per curiam). To survive a Rule 12(b)(6) motion to dismiss, a complaint must contain "sufficient

factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks and citation omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. (citation omitted). To meet this pleading standard, the complaint must state more than "an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id*. (citation omitted). "Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations omitted).

Furthermore, *pro se* pleadings are reviewed under a less stringent standard than those drafted by attorneys, and such pleadings are entitled to a liberal construction that includes all reasonable inferences that can be drawn from them. *Haines v. Kerner*, 404 U.S. 519, 520-21 (1972) (per curiam). However, even a *pro se* complaint may not merely set forth conclusory allegations. The *pro se* litigant must still set forth facts giving rise to a claim on which relief may be granted. *Johnson v. Atkins*, 999 F.2d 99, 100 (5th Cir. 1993) (per curiam) (citation omitted).

## IV. DISCUSSION

In *Heck v. Humphrey*, the Supreme Court held that when a § 1983 plaintiff seeks damages against his arresting officers, "the district court must first consider whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence; if it would, the complaint must be dismissed unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated." 512 U.S. 477, 486 (1994). Further, to succeed on a § 1983 claim for excessive force, Sandoval must prove that he "suffered (1) an injury that (2) resulted directly and only from the use of force that was excessive to the need and that (3) the

force used was objectively unreasonable." *Flores v. City of Palacios*, 381 F.3d 391, 396 (5th Cir. 2004) (citations omitted); *Goodson v. City of Corpus Christi*, 202 F.3d 730, 740 (5th Cir. 2000). Furthermore, "[u]se of deadly force is not unreasonable when an officer would have reason to believe that the suspect poses a threat of serious harm to the officer or others." *Mace v. City of Palestine*, 333 F.3d 621, 624 (5th Cir. 2003) (citing *Tennessee v. Garner*, 471 U.S. 1 (1985)).

In the present case, Sandoval pleaded guilty to two counts of aggravated assault with a deadly weapon by ramming occupied police vehicles with his own vehicle. Under Texas law, a person commits aggravated assault if the person commits assault and "causes serious bodily injury to another" or "uses or exhibits a deadly weapon during the commission of the assault." TEX. PEN. CODE § 22.02(a). Sandoval's conviction for aggravated assault with a deadly weapon has not been reversed on appeal, expunged by executive order, declared invalid by an authorized state tribunal, or called into question by a writ of habeas corpus. Thus, Sandoval's suit is barred by *Heck* if proving that the use of force was objectively unreasonable would necessarily call into question the validity of his conviction. *Ballard v. Burton*, 444 F.3d 391, 398 (5th Cir. 2006).

The Fifth Circuit had numerous opportunities to decide similar cases. In *Sappington v. Bartee*, the Fifth Circuit found that Sappington's conviction for aggravated assault required proof that he caused serious bodily injury to Officer Garcia. 195 F.3d 234, 237 (5th Cir. 1999). The court determined that Sappington's conviction necessarily implied that Garcia did not use excessive force. *Id*. The court's decision was based on Texas law, which provides that (1) as an individual, Officer Garcia could use force up to and including deadly force to protect himself, and (2) as a peace officer, Officer Garcia could use deadly force "in the course of an arrest if he reasonably believes that there is a substantial risk that the person to be arrested will cause death or serious bodily injury to the officer or another if the arrest is delayed." *Id*. Because

6

Sappington's criminal conviction required proof that he caused serious bodily injury to Officer Garcia, Officer Garcia's actions were justified and could not be deemed excessive as a matter of law.

In *Hainze v. Richards,* the Fifth Circuit made a similar decision. 207 F.3d 795 (5th Cir. 2000). The district court in *Hainze* denied the defendants' motion for summary judgment on *Heck* grounds and held that *Heck* did not bar Hainze's § 1983 suit because "a conviction for aggravated assault against a police officer does not necessarily preclude a finding of excessive force against the assaulter." *Id*. at 798. Nevertheless, the district court granted summary judgment on the § 1983 claim because it determined that the officers were entitled to qualified immunity. *Id*. On appeal, the Fifth Circuit reversed the district court's decision and stated that, "[s]ubsequent to the district court's decision we held that, based on *Heck*, an excessive force claim under section 1983 is barred as a matter of law if brought by an individual convicted of aggravated assault related to the same events." *Id*. The court held that "as in *Sappington*, the force used by the deputies to restrain Hainze, up to and including deadly force, cannot be deemed excessive." *Id*. at 798–99.

This particular line of reasoning continued. In an unpublished opinion with facts similar to the current case, the Fifth Circuit ruled that *Heck* barred a plaintiff's excessive force claim. In *Green v. City if Moss Point, Miss*., Green took Officer Martin and Officer Clark on a high-speed chase throughout Moss Point. 495 F.App'x 495, 497 (5th Cir. Oct. 26, 2012). During the pursuit, Green ran Officer Martin's vehicle off the road into a ditch. *Id*. After reaching a dead end, Green ran his vehicle into Officer Clark's vehicle, and Officer Martin immediately fired multiple shots. *Id*. The pursuit continued for several miles before Officer Martin placed Green under arrest. *Id*. Green pleaded guilty to simple assault on a police officer. *Id*. at 498. Under Mississippi law,

7

Green's conviction required the proof that Green "attempt[ed] to cause or purposely, knowingly or recklessly cause[d] bodily injury" or "put another in fear of imminent serious bodily harm." *Id*. at 499; MISS. CODE ANN. § 97–3–7. Similar to Texas law discussed in *Sappington* and in *Hainze*, Mississippi law allows Officer Martin and Officer Clark to use deadly force (1) as individuals, if there are "reasonable ground[s] to apprehend a design to commit a felony or to do some great personal injury," and (2) as officers, if the officers "would have reason to believe that the suspect poses a threat of serious harm to the officer or others." *Green*, 495 F.App'x at 499–500; MISS. CODE ANN. § 97–3–15(1)(f). Thus, because Green's conviction was based on his attempt to cause, or put another in fear of, serious bodily injury, the Fifth Circuit held that "Green's conviction for simple assault on a law enforcement officer necessarily implies that Clark did not use excessive force by shooting at Green under circumstances Green admitted in his guilty plea." *Id.* at 499.

Like the Fifth Circuit's decisions in *Sappington*, *Hainze*, and *Green*, Sandoval's excessive force claims must also be barred by *Heck*. Sandoval pleaded guilty to two counts of aggravated assault with a deadly weapon by ramming his vehicle into occupied police vehicles. After Sandoval's vehicle became disabled, Sandoval resisted arrest by refusing to leave his vehicle and openly carrying weapons in his hands. Sandoval's conviction of aggregated assault with a deadly weapon is related to his excessive force claim under section 1983. The high speed chase and subsequent aggravated assault claims were a single continuous event that ended with Sandoval's struggle and arrest. While Sandoval's charge did not require the proof of bodily injury, his conviction still required the proof that Sandoval committed his crime by using a deadly weapon—his vehicle. *See* TEX. PEN. CODE § 22.02(a)(2). Similar to the Fifth Circuit's reasoning in *Sappington*, *Hainze*, and *Green*, the officers' use of deadly force was justified.

8

Under Texas law, any person can use force up to and including deadly force "to protect the actor against the other's use or attempted use of unlawful deadly force." TEX. PEN. CODE § 9.32(a)(2)(A). Further, peace officers could use deadly force to protect themselves and in the course of an arrest if they reasonably believe that there is a "there is a substantial risk that the person to be arrested will cause death or serious bodily injury to the officer[s] or another if the arrest is delayed." TEX. PEN. CODE § 9.51(c)(2); *Sappington*, 195 F.3d at 237. Thus, the officers' actions cannot be deemed as excessive.

The current case is distinguishable from *Bush v. Strain* where the Fifth Circuit held that the plaintiff's claims did not necessarily imply the invalidity of her conviction. 513 F.3d 492 (5th Cir. 2008). In *Bush*, Bush was convicted of resisting arrest but contends that Office Galloway injured her only after she became compliant. *Id.* at 495. The Fifth Circuit held that Bush's "§ 1983 claim would not necessarily imply the invalidity of a resisting arrest conviction, and therefore would not be barred by *Heck*, if the factual basis for the conviction is temporally and conceptually distinct from the excessive force claim." *Id.* at 499.

In contrast, Sandoval was convicted of aggravated assault with a deadly weapon. Unlike Bush's resisting arrest conviction, Sandoval's conviction for aggravated assault with a deadly weapon requires proof that Sandoval used a deadly weapon during the commission of the assault. Because Sandoval used a deadly weapon during the commission of the assault, the officers' use of force, deadly or otherwise, cannot be deemed excessive under Texas law. Therefore Sandoval's excessive force claim is not conceptually distinct from his aggravated assault conviction. Unlike Bush's conviction for resisting arrest, Sandoval's conviction would be undermined if Sandoval were to prevail on his excessive force claim because Sandoval's conviction necessarily implies that Garcia did not use excessive force. For these reasons,

consistent with the Fifth Circuit's reasoning in *Hainze*, *Sappington*, and *Green*, Sandoval's excessive force claim is barred by *Heck*.

## IV. CONCLUSION

For the foregoing reasons, the Court **RECOMMENDS** that Sandoval's claims should be **DISMISSED WITH PREJUDICE** to their being asserted again until the *Heck* conditions are met. *DeLeon v. City of Corpus Christi*, 488 F.3d 649, 657 (5th Cir. 2007) (citing *Johnson v. McElveen*, 101 F.3d 423, 424 (5th Cir. 1996)).The Court **FURTHER RECOMMENDS** that all pending motions be **DENIED** as **MOOT**.

**SIGNED** this 22nd day of February, 2018.

---
ROBERT CASTANEDA
UNITED STATES MAGISTRATE JUDGE

### NOTICE

**FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS, CONCLUSIONS AND RECOMMENDATIONS CONTAINED IN THE FOREGOING REPORT, WITHIN FOURTEEN DAYS OF SERVICE OF SAME, MAY BAR DE NOVO DETERMINATION BY THE DISTRICT JUDGE OF AN ISSUE COVERED HEREIN AND SHALL BAR APPELLATE REVIEW, EXCEPT UPON GROUNDS OF PLAIN ERROR, OF ANY UNOBJECTED-TO PROPOSED FACTUAL FINDINGS AND LEGAL CONCLUSIONS AS MAY BE ACCEPTED OR ADOPTED BY THE DISTRICT COURT.**